## Case No. 966.

### BANTA v. McNEIL.

[5 Ben. 74;[1] 15 Int. Rev. Rec. 144.]

District Court, E. D. New York. March Term, 1871.[2]

JURISDICTION—HALF PILOTAGE—MARITIME CONTRACT.

1. A court of admiralty has jurisdiction over an action brought by a pilot to recover the half pilotage, declared by a state statute to be due to the first pilot who tenders his services to a vessel.

[Cited in Mason v. Ingraham, Case No. 9,238; Weaver v. McLellan, Id. 17,309.]

[See note at end of case.]

2. Cases, arising quasi ex contractu, pertaining to navigation, are cases in admiralty.

[In admiralty. Libel in personam by Alexander S. Banta against Alexander McNeil, owner of the bark Maggie Mitchell, to recover half pilotage, under the pilot act of New York. Decree for libellant. Subsequently the petition of Alexander McNeil for a writ of prohibition to the judges of the district court was dismissed by the supreme court in Ex parte McNeil, 13 Wall. (80 U. S.) 236.]

BENEDICT, District Judge. This case presents for a decision but a single question of law. It is an action by a pilot against the owner of the bark Maggie Mitchell, to recover half pilotage.

The evidence shows the tender of the service, as alleged, and also the refusal of the service by the master, and that the libellant was the first pilot who made such a tender. The only question in the case is as to the right of the libellant to maintain such an action in the admiralty, to recover the half pilotage, which he became entitled to demand upon the facts proved. This question is new in this court. If the demand be pilotage, or within the principles applied to pilotage, strictly so called, no doubt can be entertained as to the libellant's right to recover in this action; for it was long ago decided that pilotage is within the jurisdiction of the admiralty. But this demand is said to be simply a demand for a penalty created by a state law. The law referred to is the pilot act of the state of New York, which contains the usual provision for half pilotage, a feature so common in pilot laws, that it is unnecessary more fully to describe it here. This statute of the state has never been adopted as a national law by any statute of the United States. The act of August 7th, 1789, [1 Stat. 54, § 4,] only adopts the statute of the states then in force, and does not include the present act, and the declaration that "pilotage shall continue to be regulated in conformity with such laws as the states may respectively hereafter enact for that purpose," which is con-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [Petition for writ of prohibition denied in 13 Wall. (80 U. S.) 236.]

tained in the act, has no effect to adopt future laws of the states, but simply to manifest the understanding of congress, that the power to legislate upon the subject is not exclusive in the United States. Cooley v. Board of Wardens, 12 How. [53 U. S.] 320. Congress never having legislated upon this subject, the statute of the state of New York referred to is, therefore, a valid enactment, within the power of the state to make; and its legal effect is to render the defendant debtor to the libellant for the half pilotage here demanded.

The half pilotage which becomes due and payable under such circumstances, has been distinctly held by the supreme court not to be a penalty, but a sum due on contract for services. In Steamship Co. v. Joliffe, 2 Wall. [69 U. S.] 450, it is decided, that, although half pilotage be given by the statute, it is only in consideration of services rendered, and that it is recoverable, notwithstanding the subsequent repeal of the statute, upon the ground that "where a right has arisen upon a contract, or a transaction in the nature of a contract authorized by statute, the repeal of the statute does not affect it."

Again, in a later case, Steamship Co. v. Port Wardens, 6 Wall. [73 U. S.] 34, it is declared, "that the right to recover half pilotage rests not only on state laws, but upon contract. Pilotage is compensation for services performed. Half pilotage is compensation for the services which the pilot has put himself in readiness to perform by labor, risk, and cost, and which he has actually offered to perform." According to these decisions, then, the defendants are liable to the libellant, upon a contract to pay him for his services in boarding the vessel, and making tender of his services to pilot their vessel to New York.

The only question remaining is, whether such contract be maritime, and within the jurisdiction of the admiralty.

And, first, it is to be remarked, that, although the state statute fixes the amount of compensation to be paid, this does not destroy or change the nature and character of the transaction. The amount due for wharfage is, in general, fixed by statute, but the demand is none the less within the jurisdiction of the admiralty. And so, too, it was held in Hobart v. Drogan, 10 Pet. [35 U. S.] 120, in regard to pilotage proper, that the only effect of the state statute fixing the amount, was to limit the recovery in admiralty to the sum recoverable under the state laws, without affecting the jurisdiction. The jurisdiction depends upon the character of the contract.

Now, it is evident from the opinion of the supreme court, in Steamship Co. v. Port Wardens, 6 Wall. [73 U. S.] 34, that the contract for half pilotage is considered by that court to be similar in character to a contract for pilotage. Nor can I see how any distinction can be drawn between these two

classes of demands, under the view taken by the supreme court. The service, the labor, and risk in reaching and boarding the vessel, for which half pilotage is paid, are clearly maritime in character; in fact, they form part of the service for which full pilotage is paid, when the pilot is taken. The liability to pay for these services is created in the interest of navigation. The safety of the vessel is the thing sought to be attained, and the ship actually derives the advantage of an opportunity to be piloted by an experienced pilot. These are the features of a maritime contract. But it is urged that, if the case be not one of penalty, it is no more than a case arising quasi ex contractu, and that such cases have not as yet been held to be maritime contracts, within the meaning of the constitution.

Cases arising quasi ex contractu, where the transaction, in nature and effect, appertains to navigation, are as clearly cases in admiralty as cases depending upon voluntary agreements.

It has been the constant practice of the admiralty to entertain proceedings arising either ex contractu or quasi ex contractu, or ex delicto or quasi ex delicto. The Mayurka, [Case No. 1,175.] As one instance, cases of salvage may be mentioned, which are not cases of contract, and certainly not of tort. The Eagle, 8 Wall. [75 U. S.] 23. Such cases, from the beginning of navigation, have been conceded to be within the jurisdiction of the admiralty. Moreover, salvage awards are not compensation for services rendered, and do not depend upon the quantum meruit. They are rewards which the maritime law, in the interest of commerce, declares shall be given under certain circumstances.

If, then, it were true that this action is simply to recover a penalty, there would not be wanting foundation to claim that it could properly be imposed by a court of admiralty. No reason is seen why, if salvage, which is a maritime reward, be within the jurisdiction, a maritime penalty should not be. Indeed, maritime penalties, imposed as punishment by maritime courts, are a common and characteristic feature of the jurisdiction. The three months' extra wages decreed for an unlawful discharge of a seaman is a statutory penalty, in part, at least, for the use of the government. Emerson v. Howland, [Case No. 4,441.] The forfeitures which are imposed upon seamen are mulcts for misconduct, inflicted by courts of admiralty in accordance with ancient rules of the maritime law. The Elizabeth Frith, [Id. 4,361.] The offences of drunkenness, theft, quarreling, and desertion, have all been thus punished by courts of admiralty, time and time again.

These instances are referred to here, not because I sustain this case as one of penalty, but because they tend to show that there is nothing new or strained in holding that a liability, arising from the law upon

facts maritime in their character, may as well be enforced in a court of admiralty as a liability produced by the consent of parties.

Let the decree be in favor of the libellant for the amount claimed.

[NOTE. The petition of Alexander McNeil for a writ of prohibition to the judges of the district court of the United States was dismissed by the supreme court. Mr. Justice Swayne, in delivering the opinion of the court, said: "The precise question we are considering came before this court in Cooley v. Board of Wardens, 12 How. (53 U. S.) 299. The suit was for half pilotage under a statute of Pennsylvania, substantially the same, in this particular, with the statute of New York. The plaintiff recovered in the lower court, and the supreme court of the state affirmed the judgment. The case was brought here for review by a writ of error under the 25th section of the judiciary act of 1867, (1 Stat. 85,) and was argued with exhaustive learning and ability. This court, after the fullest consideration of the subject, also affirmed the judgment. * * * The other objections taken to the judgment relate to the jurisdiction of the court. It is said there is no jurisdiction in admiralty to maintain a libel for a penalty. It was not a penalty that was recovered. There was a tender of services upon which the law raised an implied promise to pay the amount specified in the statute." Ex parte McNeil, 13 Wall. (80 U. S.) 236.]